IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT H. FORD, SR.,

    Plaintiff,

v.                                           Case No. 5:17-cv-103-RH-GRJ

COMBINED INSURANCE
COMPANY OF AMERICA and
BRIAN GRISWOLD,

    Defendants.
_____/

# REPORT AND RECOMMENDATION

Pending before the Court is Defendant Combined Insurance Company of America's Motion to Dismiss and Compel Arbitration, and, in the Alternative, Motion to Dismiss for Failure to State a Claim. ECF No. 4. Plaintiff has filed a Response, ECF No. 8, and with leave of Court Defendant has filed a Reply. ECF No. 13. The motion is otherwise ripe for consideration. For the reasons explained below, Defendant's motion to compel arbitration is due to be granted.

**I.**

Plaintiff, Robert H. Ford ("Ford"), a retired attorney,[1] has brought

---

[1] Ford is representing himself in this case and is a 1974 graduate of the University of Alabama School of Law and practiced law for approximately 35 years.

claims against Combined Insurance Company of America ("Combined Insurance") for fraud, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), and negligent hiring, retention and/or supervision of Defendant's employee relating to Ford's employment as an insurance salesman with Combined Insurance. Combined Insurance requests the Court to dismiss this action and compel all of Ford's claims to arbitration under an arbitration agreement executed by Ford when he was hired.

The relevant facts as disclosed in the Complaint and affidavits filed by Combined Insurance and Ford,[2] disclose the following events. [3]

In November 2015, Ford "answered a Craiglist ad which was posted

---

ECF No. 4-1.

[2] Ford filed an affidavit, ECF No. 9, parts of which improperly include legal conclusions, opinions and matters not within his personal knowledge. Defendant has moved to strike portions of the affidavit. ECF No. 14. However, because the Court has considered the affidavit in ruling on Defendant's motion to compel arbitration and the portions of Ford's affidavit which Defendant requests the Court to strike do not effect resolution of Defendant's motion to compel, Defendant's motion to strike, ECF No. 14, is due be **DENIED**.

[3] Where, as here, a factual challenge is made that an arbitration agreement deprives the Court of the power to hear a claim the motion is based upon Rule 12(b)(1) fo the Federal Rules of Civil Procedure. In such situations the Court may consider factual matters outside the pleadings without converting the proceeding into a motion for summary judgment. *See, Carmichael v Kellog, Brown, & Root Serv., Inc.* 572 F. 3d 1271, 1279 (11th Cir. 2009). The Court, of course must construe all facts in favor of the non-moving party. *See Capital Advisors, Inv. v. Bear Stearns & Co.,* 272 Fed. Appx. 782, 784-85 (11th Cir. 2008).

in the Pensacola, Florida listings under sales positions."[4] According to Ford, the advertisement sought a "Territory Manger" in the Pensacola area who would be paid "base salary plus commissions, overrides and bonuses and benefits package."[5] Plaintiff spoke with Brian Griswold ("Griswold") and then to Kevin Kent ("Kent"), a manager for Combined Insurance.[6]

Later on Ford met with Kent to discuss Ford's potential employment with Combined Insurance.[7] In that conversation Kent represented that "Combined had the best plan for the salesmen in the whole country. He said it is hard work, but making $40-50,000 the first year could be expected if you [Ford] put in the effort."[8] Kent advised Ford that he would be sent to training in Chicago and that Ford would receive a $500 bonus at the end of the first week.[9] Additionally, Kent told Ford that Kent would provide Ford with sales leads and transportation for the first two weeks of Ford's employment. Ford was told that he would be paid 100% of the

---

[4] ECF No. 1-1, p. 6, ¶2 (Compl.)

[5] *Id.*

[6] Compl. ¶3.

[7] *Id.* ¶5.

[8] *Id.,* ¶6.

[9] *Id.,* ¶7.

commissions earned by Kent during the two-week period.[10]

As promised Ford was sent to Chicago for training. According to Ford, after completing training sales did not materialize as Ford expected. Ford alleges that Kent failed to provide him with the necessary training and leads and Ford was left to operate on his own. Ford had little success and failed to receive the amount of commissions he had expected to earn at Combined Insurance. While Ford expressed his frustrations to Combined Insurance, not much changed. Eventually, on March 4, 2016 Combined Insurance terminated Plaintiff's employment. This lawsuit followed in state court. The case was removed to this court based upon diversity jurisdiction.

Relevant to the motion to compel arbitration, on November 20, 2015, Plaintiff voluntarily completed Combined Insurance's online application, which specifically references its arbitration policy.[11] On that same day, Combined Insurance sent Ford a formal offer of employment, which included as attachments: (1) a blank copy of the "Standard Employment Agreement — Sales Representative" (the "Employment Agreement"); and (2) a blank copy of "Attachment A — Employment Dispute Arbitration

---

[10] *Id.*

[11] ECF No. 13-1, Supplemental Declaration of Libbie S. Kurtz ("Kurtz Supp'l Decl) ¶7.

Policy" (the "Arbitration Agreement").[12] In addition to advising Ford that he would begin sales school on November 30, 2015, the Offer Letter expressly provided that:

> [t]he final step in the program includes mandatory and binding arbitration with a neutral third party arbitrator. Please note that Combined Insurance's offer of employment is expressly conditioned upon your execution of the ACE Employment Dispute Arbitration Policy. Attached is a copy of the Standard Employment Agreement which includes the Employment Dispute Arbitration Policy.[13]

Plaintiff electronically accepted the Offer Letter on November 23, 2015, which expressly included the Arbitration Agreement.[14]

Plaintiff accepted the Arbitration Agreement not once, but twice. In addition to accepting the employment agreement electronically on November 23, 2015, Ford admits he executed a separate copy of the Arbitration Agreement during training, although he alleges the Arbitration Agreement was back-dated.[15]

The Arbitration Agreement, provides in relevant part that it "covers all employment related disagreements and problems that concern a right, privilege, or interest recognized by applicable law, including but not limited

---

[12] *Id.,* ¶¶ 8, 9 & Exs. A (the "Offer Letter"), B & C.

[13] *Id.,* Ex. A.

[14] Kurtz Supp'l Decl. ¶10, Ex. D.

[15] ECF No. 4-2, ECF No. 9, p. 3 ("Ford Affid.")

to, any claims under "federal, state or local statute, regulation, ordinance or common law doctrine, regarding ... wage and hour matters, conditions of employment or termination of employment."

Ford does not challenge Combined Insurance's position that the claims in this case are within the scope of the arbitration clause but instead contends that the arbitration agreement is not enforceable against him because it was obtained through fraud and cannot be enforced by Combined Insurance because Combined Insurance's parent company at the time, ACE, was not a party to the employment agreement. As discussed below, both arguments are unavailing.

## II.

Resolution of Combined Insurance's motion to compel arbitration is controlled by the Federal Arbitration Act (FAA), Pub.L. No. 68-401, 43 Stat. 883 (1925), codified as amended at 9 U.S.C. § 1*et seq.* The FAA "governs the enforceability of arbitration provisions in contracts involving transactions in interstate commerce." *Hill v Rent-A-Center, Inc.,* 398 F. 3d 1286, 1288 (11th Cir. 2005). The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). The strong public policy in favor of arbitration applies with equal

force in situations, as here, involving employment disputes. *Circuit City Stores, Inc., v. Adams,* 532 U.S. 105, 123 (2001). Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

  The law is different where a party challenges the general enforceability of the employment contract as opposed to challenging the arbitration provision. Challenges to the underlying contract as a whole, "either on a ground that directly affects the entire agreement [such as fraudulent inducement of the contract] or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" are for the arbitrator to decide. *Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 444 (2006); *Gregory v Electro-Mech. Corp,* 83 F. 3d 382, 384-86 (11th Cir. 1996)(finding tort claims, including fraudulent inducement, within the scope of the arbitration agreement); *Ben-Yishay v. Mastercraft Dev., LLC,* 553 F. Supp. 2d 1360, 1368 (S.D. Fla. 2008)(finding fraudulent inducement claim arbitrable because the claim related to the contract).

**III.**

In this case, Ford raises several arguments. First, he says that he was fraudulently induced into entering into employment with Combined Insurance. Even assuming Ford had raised a valid claim of fraudulent inducement that claim would itself be subject to arbitration because a challenge to the employment agreement itself is an issue reserved for the arbitrator where there is a valid agreement to arbitrate.

Ford's primary claim of fraud, however, relates to his argument that his signature on the Employment Agreement was forged. As to the arbitration agreement although Ford does not deny he signed the arbitration agreement, he claims that the arbitration agreement is not enforceable because the arbitration agreement is "back-dated."

Ford's arguments fail for the following reasons. For starters, whether Ford's signature on the Employment Agreement was forged raises an issue as to whether the Employment Agreement is enforceable. This is an issue which is subject to arbitration. Thus, even if Ford's signature on the Employment Agreement (as opposed to the Arbitration Agreement) was forged that would not defeat Combined Insurance's motion to compel arbitration. The arbitrator is authorized to determine whether the Employment Agreement is enforceable.

On the other hand, with regard to the Arbitration Agreement, Ford admits he signed the Arbitration Agreement and only challenges the *date* on the Arbitration Agreement. Plaintiff alleges he did not date the Arbitration Agreement and that someone else inserted a date next to his signature on the Arbitration Agreement. Even assuming that occurred it makes no difference because a date is not required to make the Arbitration Agreement valid. That is so because the FAA only requires that an arbitration agreement be in writing. The FAA does not even require that the arbitration agreement be signed. *Caley v. Gulfstream Aerospace Corp.,* 428 F. 3d 1359, 1369 (11th Cir. 2005)("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement.")

The real shortcoming of Ford's challenge to arbitration is that all of Ford's arguments concerning forged signatures and backdating, fail to account for the fact that he accepted the Employment Agreement and Arbitration Agreement electronically on November 23, 2015 *before* he traveled to Chicago for training. The Offer Letter unambiguously states that employment is conditioned upon acceptance of the employment dispute arbitration policy ( a copy of which was attached to the Offer Letter). Ford accepted the employment offer on November 23, 2015, when he accepted the offer electronically by utilizing Combined Insurance's

applicant tracking system, TALEO, which allowed Ford to enter his acceptance in the TALEO system through use of a unique, personal username and password.[16] Thus, it makes no difference whether Ford signed the Employment Agreement or the Arbitration Agreement after he arrived in Chicago for training nor does it matter whether the date on the Arbitration Agreement was placed on the hard copy by Ford or by someone else.

In sum, Ford agreed not once but twice to the Arbitration Agreement. He accepted and agreed to the Arbitration Agreement on November 23, 2015 when he electronically accepted the agreement and then later on in Chicago during training when he executed the hard copy of the Arbitration Agreement. Consequently, because there is no dispute that a valid agreement to arbitrate exists and the claims raised in Ford's complaint fall within the scope of the Arbitration Agreement the Court must grant Combined Insurance's motion to compel arbitration. 9 U.S.C. § 4; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 626 (1985).

### IV.

Ford also raises the argument the Arbitration Agreement is not

---

[16] *Kurtz Supp'l Decl.,* ¶¶ 5-10, Ex. D (the electronic printout of the acceptance).

binding because Combined Insurance's parent company at the time, ACE, is not a party to this case and was not a party to the employment agreement. Ford's argument again misses the mark.

For starters, in 2015 when Ford entered into the Employment Agreement ACE was the parent company of Combined Insurance.[17] This fact is expressly recognized in the Offer Letter. The Offer Letter provided that Ford was offered employment "with Combined Insurance, a member of the ACE Group of Companies (ACE)."[18] The Offer Letter specifically referenced the "ACE Employment Dispute Resolution Program" and attached to the Offer Letter a copy of the applicable Arbitration Agreement.

There is no question that the ACE Dispute Resolution Program applied to employment with Combined Insurance because the Arbitration Agreement expressly provides that "'ACE' means ACE US Holdings, Inc., its subsidiaries and affiliates, and ACE INA Holdings, its subsidiaries and affiliates, and ACE Capital Re USA Holdings incorporated and its subsidiaries."[19] Notably, one of the subsidiaries covered by the Arbitration

---

[17] *Kurtz Supp'l Decl.,* ¶ 2.

[18] *Id.,* Ex. A.

[19] *Id.,* ¶2.

Agreement is Combined Insurance Company of America.[20]

Presently, through a series of mergers and acquisitions Combined Insurance is a wholly owned subsidiary of Chubb INA Holdings, Inc.[21] The Arbitration Agreement contemplates a change in ownership because it expressly provides that it applies to any successors and assigns of ACE. In short, Combined Insurance is entitled to enforce the terms of the Arbitration Agreement because the agreement applies to any subsidiaries of ACE.

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1. Defendant Combined Insurance Company of America's Motion to Dismiss and Compel Arbitration, and, in the Alternative, Motion to Dismiss for Failure to State a Claim, ECF No. 4, should be **GRANTED**.[22] The Court should dismiss this action and compel all of Plaintiff's claims to arbitration subject to the Court retaining jurisdiction to enforce any arbitration award.[23]

2. Defendant Combined Insurance Company of America's Motion to

---

[20] *Id.,* ¶3.

[21] *Id.,* ¶4.

[22] Plaintiff's Motion to Strike Affidavit and Declaration of Libby S. Kurtz, ECF No. 10, has no merit and therefore should be **DENIED**

[23] Because the Court is dismissing this case based upon the enforceabilty of the Arbitration Agreement the Court need not address Combined Insurance's arguments that Ford has failed to state claims upon which relief may be granted.

Strike Portions of Plaintiff's Affidavit, ECF No. 14, should be **DENIED** because the challenged portions of Ford's affidavit do not effect the outcome of the motion to compel arbitration.

**IN CHAMBERS** this 28th day of August 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.